Steven J. Cologne (*pending pro hac vice admittance*)
scologne@higgslaw.com
Christina G. Bobb (*pending pro hac vice admittance*)
cbobb@higgslaw.com
HIGGS FLETCHER & MACK LLP
401 West "A" Street, Suite 2600
San Diego, CA  92101-7913
TEL:  619.236.1551
FAX:  619.696.1410

Matthew P. Fischer (#019770)
mfischer@swlaw.com
Trisha D. Farmer (#028809)
tfarmer@swlaw.com
SNELL & WILMER L.L.P.
One Arizona Center
400 E. Van Buren Street
Phoenix, AZ  85004-2202
Telephone:  602.382.6000
Facsimile:  602.382.6070

Attorneys for Plaintiff
CrossFit, Inc.

UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| CrossFit, Inc., a Delaware corporation, | No. |
| Plaintiff, | **COMPLAINT FOR TRADEMARK INFRINGEMENT AND BREACH OF CONTRACT** |
| v. | |
| Jeff Martin, an individual; Mikki Lee Martin, an individual, and Brand X Martial Arts, a business entity of unknown origin, | |
| Defendants. | |

Plaintiff CrossFit, Inc. ("Plaintiff" or "CrossFit, Inc.") complains and alleges as follows against Defendants Jeff Martin, Mikki Martin, and Brand X Martial Arts (collectively, "Defendants").

**THE NATURE OF THE ACTION**

1.       CrossFit, Inc. brings this civil action to redress Defendants' misappropriation of CrossFit, Inc.'s intellectual property and brand in a manner that is confusing to the public and tarnishes CrossFit, Inc.'s reputation.  Accordingly, CrossFit, Inc. brings this action at law and equity for trademark infringement and cybersquatting, arising under the Trademark Act of 1946, 15 U.S.C. § 1051, *et seq.*, as amended by the Trademark Counterfeiting Act of 1984, and the Anticybersquatting Consumer Protection Act of 1999 ("ACPA") (collectively, the "Lanham Act"), and for breach of contract under the laws of the State of Arizona.

**THE PARTIES**

2.       CrossFit, Inc. is a Delaware corporation, whose principal place of business is 1250 Connecticut Ave N.W., Suite 200, Washington D.C. 20036.

3.       CrossFit, Inc.'s primary business involves: (a) credentialing personal trainers through certificate courses and certification; (b) licensing CrossFit®-branded gyms to approved affiliates that have completed CrossFit, Inc.'s Level I ANSI-accredited course and passed the exam, signed an affiliate agreement, and paid the annual license fee; (c) providing specialty courses in given subject areas, such as CrossFit Gymnastics, or Weightlifting – this also includes "CrossFit Kids"; (d) coordinating an annual worldwide fitness competition known as the "CrossFit Games"; (e) disseminating fitness and nutrition information through the "CrossFit Journal"; and (f) selling CrossFit®-branded merchandise through the "CrossFit Store" on CrossFit, Inc.'s website.

4.       CrossFit, Inc. began in the United States but now has licensed affiliates in 116 countries on six continents.

5.       CrossFit, Inc. disseminates through its primary website, www.crossfit.com, daily workout information known as the "Workout of the Day" or "WOD." CrossFit, Inc. has used the registered trademark "CrossFit®" in the United States for personal fitness services since at least 1985.

6.       Upon information and belief, Defendants Mikki Martin and Jeff Martin, individuals residing in Ramona, California, are CrossFit, Inc. affiliates ("CrossFit Brand X") who transact business and contract to offer CrossFit® brand training services in Ramona, California, and operate at least the following website: www.crossfitkids.com (the "Infringing Domain Name").

7.       Upon information and belief, Defendant Brand X Martial Arts ("Brand X") is an unknown business entity organized under the laws of California.  Upon information and belief, Defendant Brand X is controlled in part or in whole by Defendants Jeff Martin and Mikki Martin, and the obligations of Defendants Jeff Martin and Mikki Martin are also the obligations of Defendant Brand X.

8.       Upon information and belief, Defendants Jeff Martin and Mikki Martin organized Brand X in order to conduct business using at least the following CrossFit, Inc. trademarks: "CrossFit®," and "CrossFit Kids" (collectively, the "CrossFit Marks").

9.       Upon information and belief, there is no separateness between Defendants Jeff Martin, Mikki Martin and Brand X, and it would be inequitable if Brand X were not a party to this action.  Upon information and belief, Brand X is a device by which Jeff Martin and Mikki Martin evade obligations in bad faith under the CrossFit, Inc. Affiliate Agreement Jeff Martin accepted and signed on August 12, 2004 and the subsequent CrossFit, Inc. Affiliate Agreement Mikki Martin accepted and signed on November 13, 2012.

10.      Defendants Jeff Martin and Mikki Martin are husband and wife and all acts alleged herein were undertaken both for their separate benefit, and for the benefit of their marital community, which is liable for the claims asserted herein.  Defendants Jeff Martin, Mikki Martin, and Brand X when referred to collectively, shall be referred to as "Defendants."

11.      CrossFit, Inc. is informed and believes and on that basis alleges that, at all times mentioned in this Complaint, each of the Defendants was the agent and/or alter ego

1   of each of the other Defendants and, in doing the things alleged in this Complaint, were

2   acting within the course and scope of any such agency.

3   **JURISDICTION**

4   12.      This Court has original jurisdiction over this action pursuant to 28 U.S.C.

5   §§ 1331 and 1338, and 15 U.S.C. §§ 1116 and 1121.  This Court has supplemental

6   jurisdiction over CrossFit, Inc.'s claims brought under the laws of the State of Arizona,

7   pursuant to 28 U.S.C. § 1367, because those claims form part of the same case or

8   controversy as CrossFit, Inc.'s claims brought under federal law.

9   13.      This Court has original jurisdiction over this action pursuant to 28 U.S.C.

10   § 1332, as there is diversity of citizenship among the parties and the amount in

11   controversy is greater than $75,000.

12   14.      This Court has personal jurisdiction over Defendants, in that Defendants

13   have contractually agreed to submit to the jurisdiction of the federal courts located in

14   Arizona.

15   **VENUE**

16   15.      Venue is proper in this District pursuant to 28 U.S.C. § 1391(b)(3), in that

17   there is no district in which this action may otherwise be brought and Defendants have

18   contractually agreed to submit to the personal jurisdiction of the federal courts located in

19   Phoenix, Arizona.

20   **FACTUAL BACKGROUND**

21   **The CrossFit® Fitness Program**

22   16.      CrossFit, Inc. provides a unique fitness program for strength and

23   conditioning, a program that is one of the most recognized brands in the exercise and

24   personal fitness markets.  CrossFit, Inc. is known for its distinctive program design,

25   superb results, and a robust support network for both CrossFit, Inc. affiliated gyms and

26   individual adherents to the CrossFit® brand workout program.

27

28

17.    Since at least 1985, CrossFit, Inc. has continuously used the mark "CrossFit®" in commerce to designate its distinctive program, which is easily identifiable by a trademark instantly recognized in the exercise and personal fitness markets.  The mark "CrossFit®" has been registered on the Principal Register of the United States Patent and Trademark Office since at least 2005.  (Trademark Reg. No. 3007458).  This trademark registration has not been abandoned, canceled, or revoked.

18.    In marketing its products, CrossFit, Inc. spends substantial sums of money to develop its marketing materials, such as its website, brochures, CrossFit®-branded clothing and fitness gear, catalogs, and other related materials, including original photographs and descriptions of products.  CrossFit, Inc. has also made substantial financial investments in the marketing, promotion, and advertising of CrossFit, Inc.'s brand of fitness services in connection with the mark "CrossFit®" and in the protection of CrossFit, Inc.'s valuable intellectual property rights.

19.    In order to make its fitness techniques widely available, CrossFit, Inc. offers training courses, from novice to advanced, through an accredited (by the American National Standards Institute, or "ANSI") program that includes testing, as well as annual audits of the program.  Those individuals and entities that understand and agree with CrossFit, Inc.'s philosophy – and have completed the requisite entry level course, requirements, and written examination – are eligible to apply to become licensed CrossFit Affiliates.

20.    CrossFit, Inc. affiliates are licensed to open individual gyms using the mark "CrossFit®" either before or after the rest of their name – for example "CrossFit San Diego" or "East Valley CrossFit."

21.    Genuine CrossFit, Inc. fitness programs are offered only through these authorized affiliates, using trainers certified by CrossFit, Inc., in order to ensure that CrossFit, Inc.'s unique brand of fitness services produces the best result for each CrossFit, Inc. affiliate's clients and preserves CrossFit, Inc.'s brand.

22.      As a result of the high level of quality and superb results of the comprehensive brand of its fitness services, CrossFit, Inc. has achieved an outstanding reputation among both CrossFit, Inc. affiliates and their clients.  The mark "CrossFit®" has become well and favorably known in the industry and to the public as the exclusive source of CrossFit®-branded fitness services and has come to symbolize the goodwill built up by CrossFit, Inc.

23.      Conversely, fitness programs offered by unlicensed entities without authorization do not offer the comprehensive level of quality, network of support, and opportunities the public has come to associate with the mark "CrossFit®" and thus do not offer clients the true CrossFit® brand fitness program.

**Jeff and Mikki Martin and the CrossFit, Inc. Affiliate Agreement**

24.      On August 12, 2004, Defendants Jeff and Mikki Martin entered into an affiliate agreement with CrossFit, Inc., which granted Defendants Jeff and Mikki Martin permission through a limited license to use CrossFit, Inc.'s intellectual property.  The chosen name for Defendants Jeff and Mikki Martins' CrossFit, Inc. affiliate was "Brand X Martial Arts".

25.      On November 13, 2012, Defendants Jeff and Mikki Martin entered into an updated CrossFit Affiliate Agreement (attached hereto as Exhibit A, hereinafter referred to as the "Affiliate Agreement").  Defendants' affiliate name was changed to "CrossFit Brand X" and Defendants were given permission to use CrossFit, Inc.'s intellectual property, again subject to the terms of the Affiliate Agreement.

26.      The Affiliate Agreement provides, *inter alia*, that:

- "Subject to the terms and conditions of this Agreement, during the Term, CrossFit grants to Affiliate and Affiliate accepts a limited, revocable, non-exclusive, non-transferable, non-assignable, non-delegable, and non-sublicenseable license to use the CrossFit name, trademarks, trade names, service marks or logos designated in writing by CrossFit." (Exhibit A at

1.1(a);

- "Affiliate shall not display, exhibit, distribute or otherwise use the Licensed Marks to promote, advertise, market, support or exploit any ancillary or other business(es) other than physical training based on the Licensed Services without the prior, express written permission of CrossFit in each instance, which permission may be granted or withheld in CrossFit's sole and absolute discretion." (Exhibit A at 1.1(b));

- "Affiliate will present its proposed Internet domain name to CrossFit for CrossFit's prior approval prior to registering any such domain name.  If CrossFit does not approve (in its sole discretion) of the Internet domain name at any time, Affiliate will abandon the Internet domain name, or transfer the Internet domain name to CrossFit, at CrossFit's discretion. Upon termination or expiration of this Agreement, Affiliate shall immediately transfer any domain name incorporating the Licensed Marks to CrossFit."  (Exhibit A at 1.1(c));

- "Affiliate shall not use the Licensed Marks or any CrossFit name and/or any of CrossFit's trademarks, trade names, service marks or logos owned, controlled or licensed by CrossFit in any manner other than as expressly provided for in this Agreement and without CrossFit's prior written approval in each instance.  CrossFit may add, remove, modify, suspend, substitute or replace any Licensed Mark, in whole or in part, or any element or feature of the Licensed Services, in its sole and absolute discretion.  All rights not specifically granted herein by CrossFit are expressly reserved." (Exhibit A at 1.1(d));

- "Affiliate shall use the Licensed Marks only in forms approved by CrossFit and shall comply with CrossFit's branding guidelines provided or made available to Affiliate.  Affiliate shall not create, display, promote, advertise,

distribute or use, directly or indirectly, any derivative, modification or confusingly similar version of any Licensed Marks or any other CrossFit name, logo, trademark, trade name or service mark (i.e., x-fit), in whole or in part." (Exhibit A at 1.2(a));

- "Affiliate will immediately cease any use of the Licensed Marks at CrossFit's request." (Exhibit A at 1.2(b));

- "Affiliate acknowledges that it has no interest in the Licensed Marks other than the license granted under this Agreement and that CrossFit shall remain the sole and exclusive owner of all right, title and interest in and to the Licensed Marks and all modifications, updates, improvements, derivative works and enhancements related thereto, whether made by Affiliate and whether during or after the Term. Affiliate hereby irrevocably assigns, transfers, releases and conveys to CrossFit, from the moment of its creation, all right, title and interest in and to any modification, enhancement, update, improvement or derivative work related to or based on the Licensed Marks and all intellectual property rights embodied in or pertaining to any of the foregoing.  Affiliate agrees that Affiliate's use of the Licensed Marks and any goodwill in the Licensed Marks resulting from Affiliate's use will inure solely to the benefit of CrossFit and will not create any right, title or interest for Affiliate in the Licensed Marks." (Exhibit A at 1.3(a));

- "Affiliate shall not do or cause to be done any act or thing contesting, opposing or challenging or in any way impairing or tending to impair any of CrossFit's right, title, and/or interest in or to the Licensed Marks (or any portion thereof) and/or any other CrossFit marks, products, goods or services." (Exhibit A, at 1.3(b));

- "Affiliate also waives and agrees never to assert any moral rights or artist's rights against CrossFit with respect to any of the intellectual property rights

described above.  For the purposes of this Agreement, "moral rights" or "artist's rights" means any right to (i) divulge the Licensed Marks to the public; (ii) retract the Licensed Marks from the public; (iii) claim authorship of the Licensed Marks; (iv) object to any distortion, mutilation or other modification of the Licensed Marks; or (v) any and all similar rights that affect ownership, control, or modification the Licensed Marks, existing under judicial or statutory law of any country or jurisdiction in the world, or under any treaty regardless of whether or not such right is called or generally referred to as a moral or artist's right." (Exhibit A, at 1.3 (c)); and

- "Nothing herein in any way shall give Affiliate any right, title or interest in or to the Licensed Marks (or any portion thereof) and/or any other CrossFit name, trademarks, trade names, service marks, logos, products, goods, services or any right to develop, license, sublicense, publish, perform, use, modify, create derivative works of, reproduce, distribute or exploit any of the foregoing.  CrossFit's provision of any materials or equipment to Licensee to use in connection with the Licensed Marks or Promotional Materials shall not imply a change of ownership therein, and all such materials and equipment shall remain the property of CrossFit." (Exhibit A, at 1.3(e)).

27.     Defendants remain subject to the terms of the Affiliate Agreement.

**Jeff and Mikki Martin and the CrossFit Kids Program**

28.     CrossFit, Inc. owns and operates several "Specialty Courses" which utilize, with CrossFit, Inc.'s consent, the registered CrossFit® trademark name, including, but not limited to, CrossFit Kids Trainer Course, CrossFit Defense, CrossFit Endurance and CrossFit Football Seminar, among others.  Written materials and other curriculum are often used in connection with the Specialty Courses, such as training manuals, artwork,

marketing and other related intellectual property.  These courses are run by "SMEs" or "Subject Matter Experts" and the course heads are frequently known by this term.

29.     After signing their affiliate agreement in 2004 and with CrossFit, Inc.'s approval, Defendants Jeff and Mikki Martin launched the CrossFit Kids program, a method for teaching CrossFit, Inc.'s unique brand of fitness services and its principles to children.

30.     Like prior, and subsequent, Subject Matter Experts (SME's), Defendants Jeff and Mikki Martin were offered generous terms to run the program under CrossFit, Inc.'s auspices:  this included an 80/20% split, where Defendants were allowed to keep 80% of all proceeds and 20% would accrue to CrossFit, Inc. for the license, as well as expenses surrounding the posting and administration of the program.  The Defendants were the second of three SMEs granted license to use the "CrossFit" name in 2005:  the others were Mike Burgener offering "CrossFit Weightlifting" seminars and Jeff Martone teaching "CrossFit Kettlebell" courses.

31.     In or around August 2007, with CrossFit, Inc.'s permission, Defendants launched www.crossfitkids.com (the Infringing Domain Name) and developed content for a CrossFit Kids seminar and training team.

32.     In or around 2008, with CrossFit, Inc.'s permission, Defendants began selling "CrossFit Kids Elementary School Plans" on the www.crossfitkids.com website.  CrossFit, Inc. allowed Defendants Jeff and Mikki Martin to keep the proceeds from the sale of the school plans.  In that same year, Defendants Jeff and Mikki Martin, again with CrossFit, Inc.'s permission, started conducting "CrossFit Kids" seminars, much as other SMEs offered CrossFit Kettlebell/Weightlifting/etc. courses.  Like other such courses, it was listed on the www.crossfit.com website.

33.     In 2008 Defendants Jeff and Mikki Martin were allowed to begin offering a CrossFit Kids Affiliation, wherein CrossFit, Inc. affiliates that wanted to have a "certified" CrossFit Kids program would pay a fee after completion of the course.

CrossFit, Inc. allowed Defendants Jeff and Mikki Martin to keep the proceeds from the seminars and the CrossFit Kids Affiliations.  Proceeds were paid from CrossFit, Inc. to Defendants Jeff and Mikki Martin.

34.     Defendants Jeff and Mikki Martin are also selling the CrossFit Kids Curriculum on www.crossfitkids.com which consists of:  (1) Preschool; (2) Elementary; and (3) Pre-Teen/Teen written lesson plans (collectively, the "CrossFit Kids Curriculum"), the proceeds of which are not shared with CrossFit, Inc.

35.     In March of 2009, Defendants Jeff and Mikki Martin asked CrossFit, Inc.'s permission to trademark "CrossFit Kids."  They were told that this was unnecessary as CrossFit, Inc. owned the "CrossFit®" trademark and that they should not incorporate using the "CrossFit Kids" name.  Defendants Jeff and Mikki Martin followed CrossFit, Inc.'s instructions.

36.     By spring of 2010, CrossFit, Inc. decided to terminate the CrossFit Kids' Affiliation program because it was problematic and burdensome to CrossFit, Inc.'s licensed affiliates.  Defendants Jeff and Mikki Martin discontinued the program upon CrossFit, Inc.'s demand and stopped collecting proceeds from the sale of the CrossFit Kids Affiliations in September 2010.

37.     By January 2011, at Defendants' instigation because of the lack of growth of CrossFit Kids training courses, CrossFit, Inc. assumed control over the management and operations of the CrossFit Kids Training Course seminars and Defendants Jeff and Mikki Martin were made employees of CrossFit, Inc. and were paid a salary to compensate them for their continued efforts and work with the CrossFit Kids program. Although not required to do so, CrossFit, Inc. also agreed to share and did share the net profits generated from the CrossFit Kids Training Course seminars with Defendants Jeff and Mikki Martin.

38.     Defendants Jeff and Mikki Martin subsequently approached CrossFit, Inc. and complained that they were unhappy about the amount of money they were earning

from their salaried positions and from the share of the net profits in the CrossFit Kids Training Course. In response, on or about May 1, 2011, CrossFit, Inc. increased Defendants Jeff and Mikki Martin's salaries by 100% but discontinued the sharing of the net profits in the CrossFit Kids Training Course seminars with them.

39.     Defendants Jeff and Mikki Martin are currently employees of CrossFit, Inc. and they have not received any share of the net profits in the CrossFit Kids Training Course seminars since May 1, 2011.

40.     In March 2014, CrossFit, Inc. requested that Defendants Jeff and Mikki Martin transfer the www.crossfitkids.com domain and related email accounts to CrossFit, Inc. Defendants Jeff and Mikki Martin refused and asserted that they were the rightful owners of the CrossFit Kids program, that CrossFit, Inc. had no intellectual property ownership in CrossFit Kids and that Defendants Jeff and Mikki Martin had no obligation to turn this property over to the company.

41.     Since March 2014, CrossFit, Inc. advised Defendants Jeff and Mikki Martin that the continued use of the Infringing Domain Name was not authorized. Defendants Jeff and Mikki Martin, however, refuse to comply with CrossFit, Inc.'s demands to relinquish control over the Infringing Domain Name and other CrossFit Kids' property.

42.     From March 2014 through the present, Defendants Jeff and Mikki Martin continued to make claims of ownership of CrossFit Kids, the Infringing Domain Name and the CrossFit Kids Curriculum. Specifically, Defendants Jeff and Mikki Martin claim that they founded and created CrossFit Kids and that they now own the content and the copyright to all materials and work bearing the CrossFit Kids name. Upon information and belief, such claims are being made in bad-faith as Defendants Jeff and Mikki Martin have continuously affirmed in writing that CrossFit® and CrossFit Kids are the intellectual property of CrossFit, Inc., and that Defendants Jeff and Mikki Martin have been licensing their use since at least 2004.

43.     Upon information and belief, Defendants Jeff and Mikki Martin are utilizing and operating the Infringing Domain Name with bad-faith intent to profit from the CrossFit, Inc. brand without authorization from CrossFit, Inc.

44.     Because of Defendants' unauthorized use of the CrossFit Marks, including but not limited to CrossFit Kids, on the website associated with the Infringing Domain Name, Defendants are expressly and falsely representing to consumers the affiliation between CrossFit, Inc. and Defendants, which is limited to the terms of the Affiliate Agreement.

45.     Defendants' unauthorized use of the CrossFit Marks, including but not limited to CrossFit Kids, also expressly or implicitly represents to consumers that Defendant Brand X Martial Art's services are the "genuine" CrossFit Kids program, even though CrossFit, Inc. is the rightful owner of the CrossFit Kids program.

46.     Upon information and belief, Defendants know and have known that the CrossFit Kids program cannot be offered except as authorized and directed by CrossFit, Inc. and that CrossFit, Inc. owns CrossFit Kids pursuant to Sections 1.1(a)-(d), 1.2(a)-(b), 1.3(a)-(c) and 1.3(e) of the Affiliate Agreement and/or the October 2009 License Agreement.

47.     CrossFit, Inc. has previously given notice to Defendants of the need for CrossFit, Inc. to control its brand and has demanded that Defendants return property with the registered CrossFit® trademark in it.

48.     Despite this notice, Defendants refuse to cease and desist and have in fact asserted ownership over the CrossFit® trademark and a demand for an exorbitant sum of money for a "buyout" of CrossFit, Inc.'s intellectual property.

## COUNT ONE: BREACH OF CONTRACT

49.     CrossFit, Inc. repeats and re-alleges the allegations of paragraphs 1 through 48 of this Complaint as if fully set forth herein.

50.        CrossFit, Inc. and Defendants, through Defendants Jeff and Mikki Martin, personally and as alter ego for Brand X Martial Arts, have an enforceable contract in the form of the Affiliate Agreement.

51.        CrossFit, Inc. has performed all acts as required by the Affiliate Agreement.

52.        Defendants' acts, as described, are in contravention of at least the following terms of the Affiliate Agreement: Sections 1.1(a)-(d), 1.2(a)-(b), 1.3(a)-(c) and 1.3(e).

53.        Defendants' acts were done without justification and thus constitute breach of the Affiliate Agreement, lawfully entered into by the parties.

54.        As a result of Defendants' acts, CrossFit, Inc. was harmed and is entitled to injunctive relief and damages resulting from this breach.

## COUNT TWO: VIOLATION OF LANHAM ACT

55.        CrossFit, Inc. repeats and re-alleges the allegations of paragraphs 1 through 54 of this Complaint as if fully set forth herein.

56.        Defendants' unauthorized use of the CrossFit Marks, in particular CrossFit Kids, and related activities as alleged above, in connection with the domain name www.crossfitkids.com, infringe CrossFit, Inc.'s rights under the Lanham Act in the CrossFit Marks by showing a bad-faith intent to profit from the CrossFit Marks by using the marks in a confusingly similar manner to the CrossFit Marks and/or in a manner dilutive of the CrossFit Marks.  Defendants' acts therefore violate 15 U.S.C. § 1125(d).

57.        As set forth above, CrossFit, Inc. has previously notified Defendants of their obligation to relinquish control over the Infringing Domain Name.  However, Defendants have not ceased their ongoing and continuing infringement using the Infringing Domain Name.  Accordingly, Defendants' infringement is intentional and willful, or if not intentional and willful, then reckless, or, at the very least, negligent.  Further, Defendants' wrongful acts, described herein, in connection with the ongoing infringement, are causing irreparable harm to CrossFit, Inc. for which CrossFit, Inc. has no adequate remedy at law.

58.     As a result of Defendants' intentional and willful, or reckless and/or negligent, trademark infringement, CrossFit, Inc. has suffered and is entitled to damages in an amount to be proven at trial, including, but not limited to, actual monetary damages or statutory damages, preliminary and permanent injunctive relief, including forfeiture of the infringing domain names, costs, and attorneys' fees.

59.     CrossFit, Inc. has no adequate remedy at law, and if Defendants' activities are not enjoined, CrossFit, Inc. will continue to suffer irreparable harm and injury to its goodwill and reputation.

## PRAYER FOR RELIEF

WHEREFORE, CrossFit, Inc. prays for judgment against Defendants as follows:

**On the First Count for Breach of Contract:**

1.     For Defendants, their officers, members, managers, agents, servants, employees, attorneys, confederates, and all persons acting for, with, by, through or under them to be temporarily and preliminarily enjoined and restrained for the pendency of this action and, thereafter, permanently:

   a.   from using the CrossFit Marks in any manner in connection with the advertising, offering, or promotion of any service not authorized by CrossFit, Inc. in connection with the CrossFit Marks;

   b.   from committing any acts calculated to cause clients and potential affiliates to believe that Defendants' services are those sponsored or approved by, or connected with, or warranted or guaranteed by CrossFit, Inc.; and

   c.   from otherwise competing unfairly with CrossFit, Inc. in any manner;

2.     For an order that all labels, signs, prints, packages, wrappers, receptacles, and advertisements in the possession of Defendants not authorized by the Affiliate Agreement and bearing the CrossFit Marks be delivered up and destroyed;

3.     For an award of actual damages, the exact amount of which shall be proven at trial;

4.      For an award of attorneys' fees pursuant to A.R.S. § 12-341.01; and

5.      For any such other and further relief as the Court may deem equitable including, but not limited to, any relief described in Section 11.7 of the Affiliate Agreement.

**On the Second Count for Violation of the Lanham Act**

6.      For forfeiture of the Infringing Domain Name and transfer of the domain names to CrossFit, Inc.;

7.      For an order preliminarily and permanently enjoining Defendants from further infringing on the CrossFit Marks;

8.      For actual damages suffered by CrossFit, Inc. and Defendants' profits or, alternatively, for statutory damages of up to $100,000 per domain name; and

9.      For attorneys' costs and fees pursuant to 15 U.S.C. § 1117.

**On All Counts:**

10.      For an award of costs incurred in bringing this action pursuant to 28 U.S.C. § 1920;

11.      For an award of prejudgment interest; and

12.      For such other and further relief to which CrossFit, Inc. may be entitled as a matter of law or equity, or which the Court deems just and proper.

1    DATED this 14th day of October, 2014.

2                                                  SNELL & WILMER L.L.P.

3

4                                          By: s/ Trisha D. Farmer

5                                                  Matthew P. Fischer
                                                   Trisha D. Farmer
6                                                  One Arizona Center
                                                   400 East Van Buren
7                                                  Phoenix, Arizona  85004-2202

8                                                  HIGGS FLETCHER & MACK LLP
                                                   Steven J. Cologne (*pro hac vice pending*)
9                                                  Christina G. Bobb (*pro hac vice pending*)

10                                                 Attorneys for Plaintiff CrossFit, Inc.

11   20257613

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28