Christopher Wimmer (CA SBN 263275) (*pro hac vice*)
Peter Roldan (CA SBN 227067) (*pro hac vice*)
EMERGENT LLP
535 Mission Street, 14th Floor
San Francisco, California 94105
p: 415/894-9284
f: 415/276-8929
e: chris@emergent.law
e: peter@emergent.law

Attorneys for Defendants and Counterclaimants
JEFF MARTIN, MIKKI LEE MARTIN,
BRAND X MARTIAL ARTS, and CROSSFIT
BRAND X, INC.

# UNITED STATES DISTRICT COURT

# DISTRICT OF ARIZONA

| | |
|---|---|
| CROSSFIT, INC., a Delaware corporation,<br><br>       Plaintiff and Counterdefendant,<br><br>v.<br><br>JEFF MARTIN, an individual; MIKKI LEE MARTIN, an individual; and BRAND X MARTIAL ARTS, a business entity of unknown origin,<br><br>       Defendants and Counterclaimants.<br><br>AND RELATED COUNTERCLAIMS | Case No. 2:14-cv-02277-JJT<br><br>**DECLARATION OF CARL SABA IN SUPPORT OF THE MARTINS' RESPONSE TO CROSSFIT'S MOTION TO EXCLUDE SABA TESTIMONY**<br><br>ORAL ARGUMENT REQUESTED<br><br>Complaint Filed:   October 14, 2014<br>Trial Date:           Not set |

I, CARL S. SABA, declare as follows:

1. I have been retained as an expert witness by defendants and counterclaimants Jeff Martin ("Jeff"), Mikki Martin ("Mikki"), Brand X Martial Arts ("BXMA"), and CrossFit Brand X, Inc. (together, "the Martins") in this action. I have personal knowledge of the facts set forth in this declaration except where stated on information and belief, and as to those facts I believe them to be true based on my own investigation. If called upon to do so, I could and would testify competently to all of the matters contained herein. I submit this declaration in support of the Martins' Response to CrossFit's Motion to Exclude Opinions and Testimony of Carl Saba (the "Motion").

2. In this matter, I prepared an expert report dated November 13, 2015 and an amended expert report dated June 16, 2016. These reports were filed under seal by CrossFit in support of their Motion (ECF 230-2, Exh. 1 and 2). I have also prepared a supplemental amended report that was filed by the Martins in support of their motion to amend the scheduling order to permit the report (ECF 213-7).

3. My work in this matter involved the organization, analysis and interpretation of financial statements and data—not the preparation of financial statements.

4. The preparation of financial statements requires a skill set that is fundamentally different from analysis and interpretation of financial statements. For this reason, organization such as the AICPA issue separate credentials for business valuation and accounting. Contrary to CrossFit's arguments, valuation does not require an expert to be a CPA or to prepare financial statements. This is why organizations such as the National Association of Certified Valuators and Analysts ("NACVA") and American Society of Appraisers ("ASA") issue nationally recognized valuation credentials to many individuals who are not CPAs. These

organizations consider these individuals qualified to conduct all of the steps necessary to prepare a valuation or economic damages analysis. These individuals are retained to prepare valuations and economic damages analyses that are admitted by Courts. As a holder of such credentials, and based on my experience and expertise, I am one such individual. I have been invited numerous times to speak at national conferences for the AICPA and the ASA on issues relating to analyzing financial statements and preparing valuations and I have been published by highly regarded organizations such as Thomson Reuters on the same topics.

5. With regard to CrossFit's amended interrogatory responses, CrossFit served these responses on June 16, 2016, so I was unable to consider the information contained therein for my amended report, which was due on the same date.

6. For my analysis, I used projected, instead of actual, figures for 2015, because this was the only information available at the time I prepared my report. Had I been able to consider the updated financial information that CrossFit provided in its amended interrogatory responses, it would not have materially impacted my damages calculation as it relates to trainer courses profits. The historical trainer courses revenues and expenses for CrossFit Kids are not materially different from 2011-2014 from the initial information provided. In regards to 2015 figures, I would most likely have continued to apply estimates because this is a period during which the Martins were no longer involved in CrossFit Kids. Under this hypothetical scenario, I would have had to consider what 2015 results would have been most probable if the Martins remained involved in CrossFit Kids. The Martins assert that when they left in 2014, CrossFit did not provide the same level of support to affiliates as the Martins had been historically receiving. This would cause actual results for 2015 to deviate from

what they would have been in a hypothetical scenario where the Martins retained control of CrossFit Kids.

7. My analysis is meant to capture 100% of the revenue stream that accrued to the Martins historically through 2010, and to apply the same basis of estimate for 2011 forward. I understand that historically 100% of the trainer course revenues to the Martins equals 80% of gross trainer course revenues on CrossFit Kids' activities, with the remaining 20% retained by CrossFit. It was unclear to me, however, due to the highly condensed format of the information CrossFit provided in its interrogatory responses, whether the revenues provided represented the gross revenues that would be remitted to the Martins (80%), or the entirety of CrossFit Kids' gross revenue base. I now understand that "net revenues" in the interrogatory responses means the 80% accruing to the Martins, but that was not clearly defined as such.

8. Regarding my treatment of the Martins' salaries and benefits from 2011 through 2014, CrossFit's interrogatory responses included revenue and net income figures for CrossFit Kids with no detail of the expense structure from 2011-2014, and no detail regarding the Martins' salaries and benefits.

9. With regard to CrossFit's assertions that I analyzed unsourced data, these are meritless. One of these claims is that neither the Martins nor Cross Fit provided affiliate revenue data for any years between 2011 or 2014. However Cross Fit did provide new affiliate counts for those years, and the Martins provided overlapping estimates of projected affiliates through 2012. I considered both of these sources of information, and estimated affiliate revenues based on the more conservative affiliate counts provided by CrossFit. Therefore, my estimates are not based on "unsourced" data.

10. As form my estimates for magazine and t-shirt sales from 2011-2014, the Martins provided me with this information for 2005-2010. Based on

observation of the historical trend for both revenue streams, I made reasonable estimates of these figures for 2011-2014.  I further note that my estimate of these revenue streams comprise approximately 1% of total revenues for CFK in 2014 and are therefore is immaterial to my value conclusion.

11. CrossFit has confused the applicable standards for my engagement, citing AICPA financial auditing standards.  A financial audit ensures that financial statements are prepared in accordance with Generally Accepted Accounting Principles (GAAP).  Nowhere in my expert report or in my deposition testimony do I claim to be preparing a financial audit. This is not the same scope of work as preparing a valuation or economic damages analysis, which requires making estimates of future cash flows, rather than ensuring that past financial statements are presented in accordance with GAAP.

12. Because my estimates for 2015 represent a hypothetical scenario, and the Martins did not incur any out of pocket expenses related to CFK in that year, I agree that the Martins should not be credited for such expenses.  This would result in an approximate $54,000 decrease in the Martin's damages which represents 0.5% decrease in my value conclusion per my amended expert report dated June 12, 2017.  If I had adopted less conservative assumptions in my analysis, such as weighting the most recent year historical results instead of the last three years' results as a starting point for my income and market approaches, my damages estimate would have been materially higher, even with correction of the $54,000 credit applied to 2015 expenses.

I declare on penalty of perjury under the laws of the United States that the foregoing is true and correct.  Executed at Los Altos, California.

Dated: June 26, 2017

_____
Carl S. Saba

# CERTIFICATE OF SERVICE

I hereby certify that on June 26, 2017, I electronically transmitted the foregoing document to the clerk's office using the CM/ECF system for filing and transmittal of a notice of electronic filing to the following CM/ECF registrants:

HIGGS FLETCHER & MACK LLP
Steven J. Cologne (scologne@higgslaw.com)
Roger W.R. Clayton (claytonr@higgslaw.com)

SNELL & WILMER LLP
Matthew P. Fischer (mfischer@swlaw.com)
Trisha D. Lau (tlau@swlaw.com)
Snell & Wilmer docket email (docket@swlaw.com)

*Attorneys for Plaintiff and Counterdefendants CrossFit, Inc. and Greg Glassman*

/s/ Peter Roldan
Peter Roldan