# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| CrossFit Incorporated, | No. CV-14-02277-PHX-JJT |
| Plaintiff, | **ORDER** |
| v. | |
| Jeff Martin, *et al.*, | |
| Defendants. | |
| Jeff Martin, *et al.*, | |
| Counterclaimants, | |
| v. | |
| CrossFit, Inc., *et al.*, | |
| Counterdefendants. | |

At issue are Defendants and Counterclaimants Jeff Martin, Mikki Lee Martin, Brand X Martial Arts, and CrossFit Brand X, Inc.'s (collectively, "Defendants") Motion to Amend Answer and Counterclaims (Doc. 214, MTA), to which Plaintiff and Counterdefendants CrossFit, Inc. and Greg Glassman (collectively, "Plaintiff")[1] filed a Response (Doc. 243, MTA Resp.), and in support of which Defendants filed a Reply (Doc. 253, MTA Reply); Defendants' Motion for Summary Judgment (Doc. 216, Defs.' MSJ), to which Plaintiff filed a Response (Doc. 257, Pl.'s MSJ Resp.), and in support of

---

[1] Though Greg Glassman is only a Counterdefendant and not a Plaintiff, the Court will refer to him conjunctively with CrossFit as "Plaintiff" for brevity when referring to both parties' briefing, and the Court will note Glassman's inclusion or exclusion from analysis when clarity necessitates.

1   which Defendants filed a Reply (Doc. 267, Defs.' MSJ Reply); Plaintiff's Motion for

2   Summary Judgment (Doc. 222, Pl.'s MSJ), to which Defendants filed a Response (Doc.

3   259, Defs.' MSJ Resp.), and in support of which Plaintiff filed a Reply (Doc. 268, Pl.'s

4   MSJ Reply); and Defendants' Renewed Motion for Sanctions (Doc. 235, Mot. for

5   Sanctions), to which Plaintiff filed a Response (Doc. 248, Mot. for Sanctions Resp.), and

6   in support of which Defendants filed a Reply (Doc. 254, Mot. for Sanctions Reply). The

7   Court will also resolve the Motions to Seal (Docs. 231, 233) filed in conjunction with

8   Plaintiff's Motion for Summary Judgment. Although oral argument was requested, the

9   Court finds these matters appropriate for decision without it. *See* LRCiv 7.2(f).

10  ## I.      BACKGROUND

11          Plaintiff CrossFit's business is essentially a branded fitness regimen that was

12  created by Counterdefendant Greg Glassman in the 1980s. CrossFit has over 13,000

13  affiliate gyms that it grants the right to use the registered trademark "CrossFit." In 2004,

14  Defendant Brand X Martial Arts ("BXMA"), which is operated by Defendants the

15  Martins, became a CrossFit affiliate by entering into a written agreement—the 2004

16  Affiliate Agreement—that set forth the terms of its relationship with CrossFit. (Doc. 223-

17  2, Pl.'s Separate Statement of Facts ("PSSOF") Ex. 10.)[2] The 2004 Affiliate Agreement

18  granted BXMA a limited license to use the CrossFit marks "in connection with operating

19  a gym and personal training business." The Affiliate Agreement prohibited the use of

20  CrossFit's marks "without . . . prior written approval in each instance" and was otherwise

21  restrictive regarding the marks' use.

22          At some point around the time of the 2004 Affiliate Agreement, CrossFit granted

23  the Martins an oral license to use the CrossFit mark in conjunction with the creation of a

24  program aimed at customers under the age of 18, which would be called CrossFit Kids.

26      [2] Both sides to this dispute group all Defendants together throughout their briefing
27  and state that Defendants, including the Martins, BXMA, and CrossFit Brand X
    ("CFBX"), entered into the Affiliate Agreements. The Court declines to group
    Defendants together in determining what party entered into a contract. The plain
28  language of the 2004 Affiliate Agreement states that only BXMA was a party to that
    agreement. (Doc. 223-2, PSSOF Ex. 10.)

Over the course of several years, the Martins developed an online journal, content for seminars, and training materials for CrossFit Kids. In August 2007, the Martins launched www.crossfitkids.com, through which they organized seminars, sold lesson plans, and offered the possibility of a CrossFit Kids affiliation for locations that wished to have a certified children's program. The Martins retained all CrossFit Kids revenue, except for 20 percent of seminar receipts, which were remitted to CrossFit.

The Martins assert that CrossFit granted them the right to create and operate CrossFit Kids in various oral and written agreements in 2004, 2009, 2011, and 2012. CrossFit does not dispute that it granted the Martins a license to use the CrossFit Kids name at various times, both orally and in writing, but asserts that the license was terminable-at-will and was superseded by a 2010 agreement making the Martins CrossFit employees (the "Transition Agreement"). (Doc. 223-4, PSSOF Ex. 28.) CrossFit contends that once the Transition Agreement was signed, the Martins' use of CrossFit's marks was governed by the terms of the Martins' employment. The Martins, on the other hand, maintain that a repeated and consistent oral license with a 100-year term controlled their use of CrossFit Kids.

Under either party's narrative, in late 2010, the Martins signed the Transition Agreement rendering them CrossFit employees. Under the agreement, the Martins were to receive salaries and a share of net profits from CrossFit Kids training courses. The Martins were paid under the terms of a 2009 written license agreement (the "2009 License Agreement") between CrossFit and Brand X Self Defense and Fitness ("BXSDF"), another entity operated by the Martins, until January 1, 2011. (Doc. 223-3, PSSOF Ex. 13.) Thereafter, the Martins were paid salaries pursuant to the Transition Agreement. During the same time period, CrossFit executed a licensing agreement with Reebok, granting it the right to use the CrossFit Kids name on t-shirts and other apparel. The associated royalties were not shared with the Martins.

In 2011 and 2012, new Affiliate Agreements were executed by CrossFit and Mikki Martin, the designated Affiliate, to reflect the Martins' new brand, CFBX. Just as the

2004 agreement allowed BXMA to use the CrossFit name in connection with a single physical location but prohibited other uses, the 2011 and 2012 agreements provided Mikki Martin the same. (Doc. 223-2, PSSOF Ex. 9; Doc. 223-3, PSSOF Ex. 11.) The latter contracts also allowed Mikki Martin to use the internet domain name www.crossfitbrandx.com.

After signing the Transition Agreement, the Martins continued to operate portions of the CrossFit Kids program. In May 2011, the parties agreed that the Martins would be paid an increased salary, instead of the amounts outlined in the Transition Agreement, and they received the increased salary for the remaining three years of their employment. The Martins make multiple accusations regarding CrossFit's ulterior motives in the Transition Agreement and its subsequent modification as well as the parties' deteriorating relationship. For example, the Martins claim that their primary compensation—shares of seminar profits and for courses taught by the Martins—was curtailed by purposeful planning that precluded the Martins from teaching the classes. In addition, the Martins claim that flimsy or vague accounting allowed CrossFit to disperse less funds than the Martins were owed.

After implementation of the Transition Agreement, the Martins felt increasingly marginalized within the CrossFit enterprise and aver they were unable to fully express their concerns and issues, having been effectively excommunicated by Glassman, CrossFit's chief executive. In March 2014, CrossFit demanded the Martins cede control of crossfitkids.com. The Martins refused. During the next several months of 2014, the parties discussed multiple possibilities for resolution, all of which the Martins also refused.

From March to October 2014, the Martins continued to run portions of CrossFit Kids and remained salaried CrossFit employees while engaged in the dispute. They continued to run CrossFit Kids' social media accounts, including those on Facebook, Twitter, and Instagram, where they allegedly made disparaging remarks, deleted postings made by other CrossFit employees, and advertised for their new brand, the Brand X

Method. The Martins also automatically redirected users from crossfitbrandx.com to thebrandxmethod.com. Before taking the CrossFit Kids Facebook page offline, the Martins transformed the page into a Brand X Method page while maintaining the CrossFit-related domain name and keeping the 72,000 subscribers who had "liked" the page. CrossFit avers that the Martins continue to operate the transformed webpage today.

On October 14, 2014, CrossFit fired the Martins and filed this action, alleging breach of contract and violation of the Anticybersquatting Consumer Protection Act, 15 U.S.C. § 1125(d) ("ACPA"), and seeking damages, forfeiture, preliminary and permanent injunctions, and other relief. (Doc. 1, Compl.) On December 3, 2014, Defendants answered and filed counterclaims, eventually alleging breach of the 2009 License Agreement, breach of the Transition Agreement, breaches of the covenant of good faith and fair dealing, tortious interference with contractual relationships and prospective economic relationships, and defamation. (Docs. 17, 44.)

Evidence indicates the Martins ceased using the CrossFit Kids name on February 19, 2015, and transferred control of crossfitkids.com to CrossFit in May 2015, purportedly in response to CrossFit's expressed intention to seek a preliminary injunction. During the preceding months, CrossFit had no administrative access to the website or email address and could not communicate with CrossFit Kids' customers. CrossFit then terminated the 2012 Affiliate Agreement.

As the litigation progressed, the Court entered its Rule 16 Scheduling Order on February 17, 2015, setting a cutoff date of April 10, 2015 for the parties to amend their pleadings or join additional parties. (Doc. 36.) Defendants served a notice of deposition for Glassman on February 19, 2015, proposing a deposition date of March 27, 2015. However, continual scheduling conflicts prevented the deposition from occurring until April 22, 2015. Over the next several years, the parties partook in at least seven discovery disputes, involving at least 29 discrete disputed issues that were brought to the Court for resolution, not including the present motions and arguments regarding amendment and discovery. (*See* Doc. 198.) After being referred to Magistrate Judge David K. Duncan, the

parties participated in no fewer than 10 telephonic hearings on those disputes. In June 2017, Defendants filed the current Motion to Amend and re-filed their Motion for Sanctions, and both parties filed Motions for Summary Judgment.

## II.     LEGAL STANDARDS

### A.     Motion to Amend

A party may amend a pleading once as a matter of course within 21 days after service, or within 21 days of service of, among others, a Rule 12(b)(6) motion. Fed. R. Civ. P. 15(a). In all other circumstances, absent the opposing party's written consent, a party must seek leave to amend from the court. Fed. R. Civ. P. 15(a)(2). Although the decision to grant or deny a motion to amend is within the trial court's discretion, "Rule 15(a) declares that leave to amend shall be freely given when justice so requires." *Foman v. Davis,* 371 U.S. 178, 182 (1962) (citation and internal quotation marks omitted). "In exercising its discretion with regard to the amendment of pleadings, a court must be guided by the underlying purpose of Rule 15—to facilitate a decision on the merits rather than on the pleadings or technicalities." *Eldridge v. Block,* 832 F.2d 1132, 1135 (9th Cir. 1987) (citation and internal quotation marks omitted).

However, the policy in favor of allowing amendments is subject to limitations. *Madeja v. Olympic Packers,* 310 F.3d 628, 636 (9th Cir. 2002) (holding that after a defendant files a responsive pleading, leave to amend is not appropriate if the "amendment would cause prejudice to the opposing party, is sought in bad faith, is futile, or creates undue delay"). Moreover, where a court has entered a scheduling order under Rule 16 and set a deadline for amending the pleadings, a request to amend a pleading after the deadline is in effect a request to modify the case schedule and must be evaluated under Rule 16. *Coleman v. Quaker Oats Co.*, 232 F.3d 1271, 1294 (9th Cir. 2000). Under Rule 16, a party must show "good cause for not having amended their complaint before the time specified in the scheduling order expired." *Id.* "This standard 'primarily considers the diligence of the party seeking the amendment.'" *Id.* (citing *Johnson v. Mammoth Recreations, Inc.*, 975 F.2d 604, 607 (9th Cir. 1992)).

## B.     Summary Judgment

Under Rule 56(c) of the Federal Rules of Civil Procedure, summary judgment is appropriate when: (1) the movant shows that there is no genuine dispute as to any material fact; and (2) after viewing the evidence most favorably to the non-moving party, the movant is entitled to prevail as a matter of law. Fed. R. Civ. P. 56; *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986); *Eisenberg v. Ins. Co. of N. Am.*, 815 F.2d 1285, 1288–89 (9th Cir. 1987). Under this standard, "[o]nly disputes over facts that might affect the outcome of the suit under governing [substantive] law will properly preclude the entry of summary judgment." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A "genuine issue" of material fact arises only "if the evidence is such that a reasonable jury could return a verdict for the non-moving party." *Id.*

In considering a motion for summary judgment, the court must regard as true the non-moving party's evidence if it is supported by affidavits or other evidentiary material. *Celotex*, 477 U.S. at 324; *Eisenberg*, 815 F.2d at 1289. The non-moving party may not merely rest on its pleadings; it must produce some significant probative evidence tending to contradict the moving party's allegations, thereby creating a question of material fact. *Anderson*, 477 U.S. at 256–57 (holding that the plaintiff must present affirmative evidence in order to defeat a properly supported motion for summary judgment); *First Nat'l Bank of Ariz. v. Cities Serv. Co.*, 391 U.S. 253, 289 (1968).

"A summary judgment motion cannot be defeated by relying solely on conclusory allegations unsupported by factual data." *Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989). "Summary judgment must be entered 'against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial.'" *United States v. Carter*, 906 F.2d 1375, 1376 (9th Cir. 1990) (quoting *Celotex*, 477 U.S. at 322).

## C.     Rule 11 Sanctions

"The central purpose of Rule 11 is to deter baseless filings." *Newton v. Thomason*, 22 F.3d 1455, 1463 (9th Cir. 1994). Rule 11 justifies sanctions "when a filing is

frivolous, legally unreasonable, or without factual foundation, or is brought for an improper purpose." *Estate of Blue v. Cty. of L.A.*, 120 F.3d 982, 985 (9th Cir. 1997). But because the standard governing Rule 11 is objective, "the 'improper purpose' inquiry subsumes the 'frivolousness' inquiry" when applied to the filing of complaints. *Townsend v. Holman Consulting Corp.*, 929 F.2d 1358, 1362 (9th Cir. 1990) (*en banc*). In other words, "complaints are not filed for an improper purpose if they are non-frivolous." *Id.* A "frivolous" filing is one that is "both baseless and made without a reasonable and competent inquiry." *Id.* Rule 11 "must be read in light of concerns that it will spawn satellite litigation and chill vigorous advocacy." *Cooter & Gell v. Hartmarx Corp.*, 496 U.S. 384, 393 (1990). District courts have broad discretion to sanction a party or attorney under Rule 11. *See id.*; *Barber v. Miller*, 146 F.3d 707, 709 (9th Cir. 1998). The filer's subjective good or bad faith is irrelevant to the Rule 11 analysis, and only an objective reasonableness standard applies. *See Bus. Guides, Inc. v. Chromatic Commc'ns Enters., Inc.*, 498 U.S. 533, 548 (1991); *In re Keegan Mgmt. Co., Securities Litig.*, 78 F.3d 431, 434 (9th Cir. 1996).

## III.  ANALYSIS

### A.  Motion to Amend

Defendants move the Court for leave to: (1) amend their Answer to reflect the affirmative defenses of promissory estoppel and the safe harbor provision of the Anticybersquatting Consumer Protection Act ("ACPA"); (2) amend their Counterclaim to reflect that they signed the 2009 License Agreement; and (3) name BXSDF as an additional Counterclaimant. (MTA at 1.) Defendants' reasons for amendment are their contentions that they were unable to depose Glassman until after the date for amending pleadings and adding parties had passed and that discovery in this case uncovered the 2009 License Agreement.

As with each issue raised in this case, the parties have heavily briefed many arguments for and against amendment. The Court need not address each. It is sufficient to state that Defendants have failed to exhibit any diligence whatsoever, much less the

diligence required under Rule 16. As stated above, on a request to amend after the scheduling order deadline has passed, district courts primarily consider the diligence of the party seeking amendment. *See Johnson*, 975 F.2d at 607-609. While the existence and degree of prejudice to the party opposing amendment may also be considered, if the moving party was not diligent during the period allotted for amendment, "the inquiry should end." *Id.*

Glassman's deposition took place in April 2015—more than two years before Defendants filed their Motion to Amend—and thus cannot support a request for amendment at this late stage. Similarly, Defendants' late acknowledgement of the 2009 License Agreement illustrates a lack of diligence and cannot serve as good cause for amendment. The 2009 License Agreement was "discovered" over two years prior to Defendants' filing of their Motion and was available prior to the scheduling order deadline for amendment. Indeed, Defendants appended a version of the agreement to their initial Counterclaim filed on December 3, 2014. (Doc. 17 Ex. A.) What's more, the Martins cannot reasonably claim a lack of knowledge of the agreement prior to "discovering" it in this litigation when an entity they operated was a party to it in 2009.

Because Defendants have failed to show good cause under Rule 16, the Court need not examine whether the proposed amendment is proper under Rule 15. *See Graber v. Zaidi*, No. 3:09-CV-00475-RAM, 2010 WL 3238918, at *3 (D. Nev. Aug. 12, 2010). Nonetheless, the Court would find that amendment to add new claims under Rule 15 is equally unwarranted, given the late stage of proceedings and that "late amendments to assert new theories are not reviewed favorably when the facts and the theory have been known to the party seeking amendment since the inception of the cause of action." *Acri v. Int'l Ass'n of Machinists & Aerospace Workers*, 781 F.2d 1393, 1398 (9th Cir. 1986). To sit on or ignore such knowledge, only to move to amend counterclaims and add a Counterclaimant in conjunction with motions for summary judgment and after the close of discovery, is wholly unwarranted. Defendants seem to argue that if they would have

filed their Motion after the date for amendment had passed anyway, it matters little if it was filed weeks or years after. The Court disagrees.

Because of their lack of diligence—not only early in this litigation but also in moving to amend years after they should have known the facts allegedly giving rise to their proposed amendments—Defendants cannot demonstrate the good cause required for the Court to amend the Scheduling Order. *See Johnson*, 975 F.2d at 606-11 (holding, where the plaintiff moved to join a defendant four months after the scheduling order deadline, that the plaintiff "failed to demonstrate good cause for his belated motion to amend" because the joined defendant's answer to the complaint and responses to interrogatories put the plaintiff on notice that he had not joined the correct party). At the latest, Defendants had actual knowledge of the facts they contend support their amendments in 2015. Even if Defendants' actual "discovery" of the foundational facts were the sole inquiry, Defendants fail to account for the subsequent two-year delay. *See B2B CFO Partners, LLC v. Kaufman*, No. CV 09-2158-PHX-JAT, 2011 WL 2713887, at *4 (D. Ariz. July 13, 2011) (denying a similar motion, finding "Plaintiffs had a seemingly complete picture of what they now allege" and "yet they limited their [claims]"). For these reasons, the Court must deny Defendants' Motion to Amend.

### B.     Summary Judgment

Defendants move for summary judgment as to all of Plaintiff's claims. Plaintiff, in turn, moves for summary judgment on its offensive claims as well as each of Defendants' counterclaims. The Court first addresses the pending Motions on Plaintiff's claims, before moving to Plaintiff's arguments regarding Defendants' counterclaims.

### 1.     Plaintiff's Claims

Each party moves for summary judgment on Plaintiff's claims, and the Court addresses those motions conjunctively.

### a.     Breach of the Affiliate Agreement (Count 1)

Defendants assert they are entitled to summary judgment on Plaintiff's breach of contract claim by arguing that the 2012 Affiliate Agreement has nothing to do with

1   CrossFit Kids—the term containing Plaintiff's mark that Plaintiff contends Defendants
2   used without Plaintiff's permission—that Plaintiff has failed to present any evidence of
3   damages, and that Plaintiff's claimed damages are not appropriate remedies in a breach of
4   contract action. (Defs.' MSJ at 2-11.) Plaintiff contends that no genuine dispute of
5   material fact remains as to Defendants' use of Plaintiff's mark in contravention of the
6   terms of the 2012 Affiliate Agreement, entitling Plaintiff to summary judgment.

7       Under Arizona law, "[t]o bring an action for the breach of the contract, the
8   plaintiff has the burden of proving the existence of the contract, its breach and the
9   resulting damages." *Thomas v. Montelucia Villas, LLC*, 302 P.3d 617, 621 (Ariz. 2013).
10  Here, there is no dispute as to the existence of the 2012 Affiliate Agreement, under which
11  Plaintiff brings its claim. But, by the plain language of the agreement, only one
12  Defendant—Mikki Martin—was a party to the agreement. (Doc. 223-2, PSSOF Ex. 9
13  ("This CrossFit Affiliate Agreement . . . is made and entered into as of November 13,
14  2012 . . . by and between CrossFit, Inc. . . . and Mikki Martin . . . ('Affiliate').").)

15      At the heart of contract law is the maxim that the Court cannot enforce an
16  agreement against a party that is not a signatory to that agreement, nor can a party
17  recover for breach of the agreement's implied covenant of good faith and fair dealing if
18  not a party to that agreement.[3] *See, e.g.*, *Nationwide Res. Corp. v. Massabni*, 658 P.2d
19  210, 215 (Ariz. App. Ct. 1982) (generally, a contract must be signed by the party against
20  whom enforcement is sought). Though both sides move for summary judgment on
21  Plaintiff's breach of contract claim, the parties have not argued or produced evidence that
22  a Defendant that was not a party to an agreement is somehow liable for its breach
23  through, for example, the doctrines of alter ego or piercing the corporate veil. As a result,
24  Plaintiff's claim for breach of the 2012 Affiliate Agreement fails as a matter of law
25  against Defendants Jeff Martin, BXMA and CFBX, who were not parties to that
26
27  ─────────────────────
28      [3] Plaintiff makes this very argument in resisting Defendants' assertion of a
    counterclaim against Plaintiff for breach of the 2009 License Agreement, to which no
    Defendant was a party. The Court discusses that counterclaim more fully below.

agreement, and those Defendants are entitled to summary judgment on Count 1.[4] *See* Fed. R. Civ. P. 56(f); *Albino v. Baca*, 747 F.3d 1162, 1176 (9th Cir. 2014).

As for the remaining liability for breach of the 2012 Affiliate Agreement, Defendants argue that both breach and damages are lacking. Defendants first contend that the claim fails because the Affiliate Agreement does not mention or contemplate the use of the term CrossFit Kids. (Defs.' MSJ at 6.) Instead, Defendants argue, the Affiliate Agreement only governs Defendants' rights to use the CrossFit name in connection with their affiliate gym, CrossFit Brand X. (Defs.' MSJ at 6.) Plaintiff responds that not only does the agreement contemplate CrossFit Kids, but it contemplates all uses of its marks and explicitly restricts unauthorized use, even if only by blanket protection. (Pl.'s Resp. at 2-4; Pl.'s MSJ at 14-15.)

The 2012 Affiliate Agreement specifically provides that Mikki Martin, as Affiliate, shall use Plaintiff's marks only in the forms approved by Plaintiff and "shall not" use a "derivative modification, or confusingly similar version" of its marks. (Doc. 223, PSSOF ¶ 24, Ex. 9.) The Affiliate Agreement also states that Plaintiff has "the right to prohibit any use by [Mikki Martin] of the Licensed Marks" and that Mikki Martin shall "immediately cease any [such] use." (Doc. 223, PSSOF ¶ 24, Ex. 9.) Thus, while the agreement does not explicitly discuss or contemplate the term "CrossFit Kids," it also does not limit its application to uses of "CrossFit" in conjunction with "Brand X," as Defendants contend. By its plain language, the agreement contemplates all uses of "CrossFit" and precludes uses other than those specifically permitted.

Defendants concede that the Affiliate Agreement only confers the right to use the CrossFit marks for "one website" and "one physical gym," and the agreement "makes no mention of 'CrossFit Kids.'" (Defs.' MSJ at 6.) The Affiliate Agreement only grants Mikki Martin limited and specified rights and explicitly excludes others by preserving

---

[4] By granting Jeff Martin summary judgment as to Plaintiff's breach of contract claim because he is not a party to the contract in question, the Court does not preclude Plaintiff from reaching him through marital property with Mikki Martin, to the extent that may apply here.

Plaintiff's rights to all other uses of the term CrossFit and affirming Plaintiff's right to deny affiliates any further use. While Defendants argue that the agreement's failure to address CrossFit Kids enables them to use that term without breaching the agreement, the exact opposite is true. Because the agreement did not grant rights beyond its terms and categorically excluded any other use of Plaintiff's marks, it provided no permission for Mikki Martin to use CrossFit Kids. Thus, if Mikki Martin continued to employ the term without permission, she would have been in breach of Sections 1.1(a)(ii), 1.1(a)(v), 1.1(c)-(d), 1.2(a)-(b), 1.3(b), 8(a)(v), and 11.5(e) of the 2012 Affiliate Agreement.

But both parties concede that other agreements—oral and written—may have superseded the prohibitions in the 2012 Affiliate Agreement to a certain extent and granted Defendants the right to use CrossFit Kids for a certain time. *See*, *e.g.*, *Tabler v. Industrial Comm'n of Ariz.*, 47 P.3d 1156, 1159 (Ariz. Ct. App. 2002) (finding an oral agreement may bind the parties in contract, even though a formal written agreement is not executed, if it is clear that the parties intended to be bound). Genuine issues of material fact remain as to when enforceable agreements were created and if those agreements were terminated, leaving the 2012 Affiliate Agreement as the only remaining controlling agreement.[5]

Defendants also argue that Plaintiff's claim fails both for lack of damages and lack of appropriate damages. (Defs.' MSJ at 7-11.) Defendants contend that Plaintiff's expert reports support only two types of damages: disgorgement and corrective advertising, and while these types of damages may relate to Lanham Act violations, they are inapplicable to claims for breach of contract. (Defs.' MSJ at 8.) In support, Defendants cite to ample Arizona law holding that breach of contract damages rarely contemplate deterrence, fault,

_____

[5] In its Order on Defendants' First Amended Counterclaim, the Court reiterated that Defendants failed to sufficiently allege facts supporting an inference that the 100-year oral agreement and the 2010 integration agreement were enforceable pursuant to the Statute of Frauds. (Doc. 67.) With regard to Plaintiff's claim for breach of the 2012 Affiliate Agreement resulting from Mikki Martin's alleged impermissible use of the CrossFit mark, both parties have now provided evidence regarding other oral and written agreements that may have been in place granting Defendants limited permission to use the CrossFit mark, precluding summary judgment on Plaintiff's claim.

or "cost of repair." (Defs.' MSJ at 8-9.) In response, however, Plaintiff presents precedent that the breach of a trademark license through unauthorized use of the licensed mark results in trademark infringement and thus allows for damages outside those normally arising for breach of contract claims. (Pl.'s Resp. at 6.) Moreover, Plaintiff provides precedent supporting the proposition that additional relief, including injunctive relief, is available for breach of the 2012 Affiliate Agreement and that disgorgement and corrective advertising campaigns are not explicitly excluded as breach of contract damages. (Pl.'s Resp. at 5.)

Defendants' cited precedent does not explicitly exclude disgorgement, corrective advertising, or analogous remedies in this scenario. Moreover, breach of contract damages are intended to be compensatory, *see A.R.A. Mfg. Co. v. Pierce*, 341 P.2d 928, 932 (Ariz. 1959), and Plaintiff has provided expert testimony and other evidence pertaining to damages arising from Defendants' alleged breach of explicit preclusions in the 2012 Affiliate Agreement.

Defendants also contend that Plaintiff's prayer for corrective advertising damages, even if awardable in a breach of contract case, is unsupported by the evidence. (Defs.' MSJ at 9.)[6] Specifically, Defendants claim Plaintiff has shown no actual harm by pointing to evidence that Plaintiff collected the same revenue during the four month period when Defendants were operating crossfitkids.com before its termination, Plaintiff has not been harmed during the time the site has been inoperable, and Plaintiff's expert only identified three known incidents of confusion. (Defs.' MSJ at 10-11.) For its part, Plaintiff points to evidence that Defendants directed visitors from crossfitkids.com to their competing business, Defendants deprived Plaintiff of control over its website, name,

_____

[6] Defendants argue that Plaintiff's expert report should be stricken for noncompliance with Rule 702 of the Federal Rules of Evidence (Defs.' MSJ at 9.) Having already denied Defendants' Motion to Strike the Expert Report of Anastasia Smith (Doc. 210), the Court need not again address this contention. (*See* Doc. 270.) Moreover, Plaintiff asserts that Carlyn Irwin is its damages expert, rather than Ms. Smith, and has opined on those damages. (Pl.'s Resp. at 8.)

and brand, and Plaintiff received fewer inquiries regarding CrossFit Kids during the relevant time period. (Pl.'s MSJ Resp. at 8; Pl.'s MSJ at 11.)

While "scrutiny of Plaintiffs' damages evidence is appropriate at the summary judgment stage," *Lemon v. Harlem Globetrotters Int'l, Inc.*, 437 F. Supp. 2d 1089, 1103 (D. Ariz. 2006), the standard for granting a motion for summary judgment remains the same. If any genuine dispute of material fact exists, neither party is entitled to summary judgment. *See Dao v. Liberty Life Assurance Co. of Boston*, No. 14-CV-04749-SI, 2016 WL 3595686, at *6 (N.D. Cal. July 5, 2016); *Young v. Wideawake Death Row Entm't LLC*, No. CV 10-1019 CAS JEMX, 2011 WL 12565250, at *12 (C.D. Cal. Apr. 19, 2011) ("The precise amount of damages is a question of fact, inappropriate for summary adjudication."). Here, Plaintiff has provided multiple expert reports regarding the damages it suffered, averred both quantified and unquantified harm from Defendants' alleged conduct, and presented precedent justifying the application of the alleged damage doctrines towards its claims. Likewise, Defendants have provided evidence that even if they were in breach or violation of the law, Plaintiff has not been harmed. Thus, a genuine issue of fact remains as to both the existence of Plaintiff's damages and the amount. In addition, as noted above, the precise date on which permission to use the CrossFit Kids term was revoked remains unclear. Accordingly, the Court will not grant summary judgment to either party on Mikki Martin's alleged breach of the 2012 Affiliate Agreement and, in conjunction with determining liability and damages, the factfinder must also determine the date any breach began and whether and when it ceased.

The Court also notes that while Plaintiff also seeks injunctive relief for Defendants' alleged breach, Plaintiff has not properly moved for summary judgment with respect to that remedy, nor have the parties fully briefed the issue. Although Defendants conceded irreparable harm in the terms of the contract (Doc. 223-2, PSSOF Ex. 9 ¶ 11.7), that is not dispositive. *See Int'l Ass'n of Plumbing & Mech. Officials v. Int'l Conference of Bldg. Officials*, 79 F.3d 1153 (9th Cir. 1996). Moreover, it remains unresolved whether

Mikki Martin continues to use Plaintiff's marks and, if so, what damages flow from that use. Any continued use of Plaintiff's marks must be addressed at trial.

### b. Violation of the Anticybersquatting Consumer Protection Act (Count 2)

Both parties also move for summary judgment on Plaintiff's ACPA claim under 15 U.S.C. § 1125(d). Plaintiff argues that the evidence undisputedly shows Defendants used CrossFit Kids' domain name in bad faith and to profit from CrossFit marks. (Pl.'s MSJ at 14.) Defendants argue that Plaintiff has failed to present sufficient evidence of bad faith, relying on the safe harbor provision of the ACPA, 15 U.S.C. § 1125(d)(1)(B)(ii), which provides that "bad faith intent . . . shall not be found in any case in which the court determines [] the person believed and had reasonable grounds to believe . . . use of the domain name was a fair use or otherwise lawful."[7] (Defs.' MSJ at 11-16.)

Defendants contend that the evidence shows they reasonably believed their use of crossfitkids.com was lawful because they had operated CrossFit Kids since 2004 with Plaintiff's consent and understood that their authority to run the 2007-created website between October and February 2014 was still in effect. (Defs.' MSJ at 14-15.) In doing so, Defendants rely on evidence of a purported promise by Glassman that they would have exclusive rights to CrossFit Kids for 100 years. (Defs.' MSJ at 14.)

Plaintiff responds that Defendants essentially raise a defense of promissory estoppel, which is not a permissible defense to Plaintiff's claim. (Pl.'s MSJ at 6-8.) Plaintiff accurately points out that the Court previously dismissed any affirmative defenses based on the purported 100-year oral agreement. (Pl.'s MSJ Resp. at 8.) However, the inquiry with regard to the Safe Harbor Provision of the ACPA is not whether reliance on the purported promise was legally sound, but whether Defendants contemporaneously relied on such alleged promises and had reasonable grounds to do so,

---

[7] Though the Court has denied Defendants' attempt to assert an affirmative defense under the safe harbor provision of the ACPA, bad faith intent is nonetheless a positive element incumbent on Plaintiff to prove.

particularly during the time prior to the lawsuit and before they had been apprised of the promise's unenforceability. That inquiry is factual, and questions regarding the promise and reliance thereon remain. Thus, neither party is entitled to summary judgment, and Plaintiff's ACPA claim will proceed to trial.

### c.    Plaintiff's Purported Additional Claims

As addressed above, Plaintiff's Complaint contains two claims: breach of contract (Count 1) and violation of the ACPA (Count 2). (Compl. ¶¶ 49-59.) In its Motion to Exceed the Page Limit RE Motion for Summary Judgment, Plaintiff states that it has alleged four causes of action, adding claims for violations of the Lanham Act under 15 U.S.C. §§ 1114 and 1125(a). (Doc. 207 at 1.) In their Motion for Summary Judgment, Defendants protest Plaintiff's addition of two new claims.[8] (Defs.' MSJ at 5 n.3.) In a footnote in its Response to Defendants' Motion for Summary Judgment, Plaintiff contends Defendants' objection is "disingenuous" because Plaintiff's Complaint already contains the new claims and, in any event, Defendants did not object to the new claims in discovery responses or the briefing on motions for sanctions and to exceed the page limit. (Pl.'s MSJ Resp. at 1 n.1.) In the same footnote, Plaintiff also states that "[s]hould the Court deem amendment necessary, [Plaintiff] requests leave to amend." (Pl.'s MSJ Resp. at 1 n.1.) That is not how this works.

First, Plaintiff is incorrect that the new claims are contained in the Complaint. Count 2 of the Complaint explicitly alleges that Defendants "violate 15 U.S.C. § 1125(d)"—the ACPA—and never refers to or mentions the new statutory sections Plaintiff contends the Complaint comprises. (Compl. ¶ 56.) Moreover, the Complaint's allegations are clearly aimed at a claim under the ACPA: for example, Plaintiff alleges

---

[8] In their Reply in support of their Motion to Strike the Expert Report of Anastasia Smith, Defendants also objected to the fact that Plaintiff "has introduced trademark infringement claims to this action during summary judgment briefing, without moving to amend the complaint." (Doc. 249, Mot. to Strike Reply at 4.) Although the Court declined to strike Ms. Smith's Expert Report on relevance grounds (*see* Doc. 270, Order at 3)—indeed, the Court has not yet ruled whether certain damages Plaintiff seeks for its breach of contract claim should be precluded—the Court agrees with Defendants that Plaintiff's arguments in support of its two new claims in conjunction with that briefing were improper, because the new claims are not alleged in the Complaint.

that "Defendants' unauthorized use of the CrossFit Marks, in particular CrossFit Kids, and related activities as alleged above, *in connection with the domain name www.crossfitkids.com*, infringe CrossFits Inc.'s rights under the Lanham Act." (Compl. ¶ 56 (emphasis added).) No allegations in the Complaint put the Court or Defendants on notice that Plaintiff intended to raise claims under different sections of the Lanham Act, 15 U.S.C. §§ 1114 and 1125(a).

Second, the fact that Defendants may have responded to questions, in discovery and briefing, that Plaintiff contends were related to its new claims is not enough to warrant a constructive amendment to the Complaint. The only authoritative case Plaintiff cites in support of its argument is inapposite. There, the Ninth Circuit addressed whether it could consider new evidence both parties had used in summary judgment briefing but the plaintiff had not referred to in the complaint. *Aetna Cas. & Sur. Co. v. Merritt*, 974 F.2d 1196, 1999 (9th Cir. 1992). Here, Plaintiff is attempting to add entirely new causes of action to the Complaint through its reference to them in discovery and briefs to the Court.[9] The Federal Rules of Civil Procedure provide that the complaint—not a motion to exceed the page limit or any such document—is the document that gives notice of a plaintiff's claims to the Court and defendants. *See* Fed. R. Civ. P. 3, 4, 8.

Third, Plaintiff has not properly moved to amend the Complaint and, even if it had, the Court would deny such a request at this time. Plaintiff's offhand request to amend the Complaint in a footnote of its Response to Defendants' Motion for Summary Judgment does not begin to demonstrate why such an amendment would comport with Rules 15 and 16, as required. As the Court detailed above in denying Defendants' request to amend the Counterclaims, the main inquiry under Rule 16 is the diligence of the party seeking amendment. *See Johnson*, 975 F.2d at 607-609. Here, nothing before the Court indicates that the information upon which the new claims are based is new to Plaintiff,

---

[9] Though not raised in Plaintiff's footnote-motion-to-amend, the Court notes that Plaintiff made reference to its new claims in the Amended Joint Rule 26(f) Discovery and Case Management Plan filed with the Court. (Doc. 32.) However, that document, like any brief to the Court, does not determine what claims are properly before the Court and Defendants; the Complaint does.

1  and Plaintiff has presented no reason why it could not have amended the Complaint

2  during the period allotted in the Scheduling Order, which specified a deadline that passed

3  over two years ago. Plaintiff thus failed to exercise diligence in amending the Complaint,

4  and the inquiry ends there. For the same reasons the Court will deny Defendants' Motion

5  to Amend the Counterclaims, the Court must deny Plaintiff's motion to amend the

6  Complaint, such as it was.

7  **2.  Defendants' Counterclaims**

8  Plaintiff moves for summary judgment as to all of Defendants' counterclaims.

9
10  **a.  Breach of the 2009 License Agreement and the Covenant of Good and Fair Dealing (Counterclaims 5 and 6)**

11  Defendants assert counterclaims against CrossFit that it breached the 2009 License

12  Agreement and associated covenant of good faith and fair dealing by failing to pay them

13  all the seminar revenues they were entitled to and by licensing to Reebok the right to sell

14  apparel bearing the CrossFit Kids logo. (Doc. 44, First Am. Countercl. ¶¶ 87-100; Defs.'

15  MSJ Resp. at 14.) Plaintiff moves for summary judgment on these claims, arguing that

16  Defendants testified they were adequately paid under the agreement and have proffered

17  no admissible evidence of damages. (Pl.'s MSJ at 20-21.)

18  Counterclaims 5 and 6 suffer from a more fundamental defect, as Plaintiff points

19  out. (Pl.'s MSJ at 20.) It is undisputed that Defendants did not enter into the 2009 License

20  Agreement; BXSDF did.[10] (*See* Pl.'s MSJ at 20 n.7; Doc. 223-3, PSSOF Ex. 13.)

21  Although operated by the Martins, BXSDF is a separate legal entity and not a party to

22  this action.[11] As stated above, the Court cannot enforce an agreement against a party that

23
24  [10] Plaintiff also contends that it never executed the 2009 License Agreement, but the Court need not reach this contention because Defendants were not party to the purported agreement.

25

26  [11] The Court notes that Defendants attempted to add BXSDF as a party in their Motion to Amend to avoid this very result. However, as detailed above, they failed to exercise diligence in amending their pleading in the time set forth in the Rule 16 Scheduling Order. The Court thus cannot treat BXSDF as a party. Though Plaintiff acknowledges in its pleading that the Martins were paid pursuant to the 2009 License Agreement for a certain period, that does not change the fact that the agreement was executed by a legal entity operated by the Martins but not a part of this litigation.

27

28

is not a signatory to that agreement, nor can a party recover for breach of the agreement's implied covenant of good faith and fair dealing if not a party to that agreement. *E.g.*, *Fobes v. Blue Cross & Blue Shield of Ariz., Inc.*, 861 P.2d 692, 698 (Ariz. App. Ct. 1993) (third party beneficiary to contract cannot sustain action for breach of good faith and fair dealing based on that contract); *see also GECCMC 2005-C1 Plummer St. Office Ltd. P'ship v. JPMorgan Chase Bank, N.A.*, 671 F.3d 1027 (9th Cir. 2012) (explaining requirements for third party beneficiary to enforce rights under contract to which it is not a party). The parties have not argued or produced evidence that a Defendant that was not a party to an agreement can somehow bring a counterclaim to recover damages for its breach through, for example, the third party beneficiary doctrine. Thus, the Court will grant Plaintiff summary judgment as to Defendants' breach of the 2009 License Agreement and associated breach of the implied covenant of good faith and fair dealing claims (Counterclaims 5 and 6).

### b. Breach of the Transition Agreement and the Covenant of Good and Fair Dealing (Counterclaims 7 and 8)

Defendants also assert counterclaims against CrossFit that it breached the Transition Agreement and associated covenant of good faith and fair dealing by failing to pay them the amounts they were properly owed under the agreement. (First Am. Countercl. ¶¶ 101-14.) As a threshold matter, to the extent Defendants BXMA and CFBX sue CrossFit to enforce the agreement, the claims are improper for the same reasons as discussed above—BXMA and CFBX were not parties to the Transition Agreement. (*See* Doc. 223-4, PSSOF Ex. 28.) Plaintiff is thus entitled to summary judgment on Counterclaims 7 and 8 as brought by BXMA and CFBX.

Plaintiff moves for summary judgment on Defendants' counterclaims by arguing those claims are barred by the applicable statute of limitations. (Pl.'s MSJ at 21-22.) Plaintiff contends that the statute of limitations period for breach of an employment agreement, like the Transition Agreement, is one year from accrual, and that the breach of the covenant of good faith and fair dealing claim is subject to the same statute of

limitations period as an action on the underlying contract. (Pl.'s MSJ at 22.) Thus, Plaintiff argues, Defendants' counterclaims are time-barred because their allegations of breach stem from early 2011 and they brought the counterclaims on December 3, 2014. (Pl.'s MSJ at 22.)

Defendants respond that "equitable estoppel" should toll the statute of limitations period for their claims. (Defs.' MSJ Resp. at 16-18.) Under Arizona law, to determine whether a statute of limitations period should be equitably tolled, the Court looks to whether: (1) the defendant engaged in affirmative conduct intended to cause the plaintiff's forbearance; (2) the defendant's conduct actually caused the plaintiff's failure to file a timely action; (3) the defendant's conduct reasonably could be expected to induce forbearance; (4) the plaintiff brought the action within a reasonable time after termination of the objectionable conduct. *Nolde v. Frankie*, 964 P.2d 477, 480-81 (Ariz. 1998). Here, Defendants present testimony that Plaintiff represented that any disputes regarding the Transition Agreement would be resolved internally and that oral promises previously made would be honored. (Defs.' MSJ Resp. at 17 (citing Doc. 261, Defendants' Separate Statement of Facts ("DSSOF") ¶¶ A10-11, A24, A40).) Defendants also attest that it was not until March 2014 that they became aware of Plaintiff's current position that the Martins had no right to use "CrossFit Kids." (Defs.' MSJ Resp. at 18 (citing DSSOF ¶ 42).)

Plaintiff, on the other hand, contends that equitable estoppel is an affirmative defense that must be pled. (Pl.'s MSJ Reply at 12 (citing Fed. R. Civ. P. 8(c)(1)).) The Court recognizes that Defendants have at times confused the doctrines of equitable estoppel and equitable tolling, but the Court construes Defendants' Response as seeking the latter. In any event, Plaintiff's contention is a curious one. Defendants are arguing that the statute of limitations period for their counterclaims should be equitably tolled so that they are not time-barred. Plaintiff states that equitable tolling is unavailable because it is an affirmative defense that Defendants must plead and the Court has stricken Defendants' affirmative defenses. However, Defendants cannot be required to plead an

affirmative defense to their own claim. Thus, the Court will not disregard Defendants' argument for equitable tolling on that basis.

Plaintiff also argues that tolling should not apply because the statements Defendants aver Plaintiff made were vague and could have not have reasonably induced Defendants to forbear bringing their Counterclaim. (Pl.'s MSJ Reply at 12-13.) Plaintiff is correct that "[v]ague statements or ambiguous behavior by the defendant" will not give rise to a claim for equitable tolling of the statute of limitations period. *See Nolde*, 964 P.2d at 481. And the Court agrees that Plaintiff's alleged statements are not explicit and fall short of an overt threat or command to refrain from filing suit. Moreover, Defendants' filings contradict their argument here where they maintain that they were unable to effectively communicate with Glassman for years and were only in contact with his advisors, entourage and other employees. (*See* Defs.' MSJ Resp. at 5.)

Nonetheless, the Court does not find that the purported statements are so vague as to prevent Defendants from seeking equitable tolling of the statute of limitations period. The alleged assurance of internal resolution, coupled with the longstanding, complex, and intertwined nature of the parties' relationships—both professional and personal—and the interlocking, superseding, and sometimes contradictory agreements may allow a jury to find that reliance on such assertions was reasonable. What assurances were made, and whether the Martins were reasonable in their subsequent conduct, are genuine questions of fact to be resolved at trial. *See Huss v. City of Huntington Beach*, 317 F. Supp. 2d 1151, 1162 (C.D. Cal. 2000) ("Most authorities treat the question whether equitable tolling is justified as a question of fact for resolution by the jury.") (collecting cases); *Tanaka v. First Hawaiian Bank*, 104 F. Supp. 2d 1243, 1255 (D. Haw. 2000) ("If the analysis gets this far, equitable tolling is also a disputed question of fact for a fact-finder.").

Plaintiff next argues that even if the statute of limitations period is equitably tolled, the evidence undisputedly shows that Plaintiff did not breach the Transition Agreement. (Pl.'s MSJ at 22-23.) Plaintiff cites to testimony from the Martins that they

were unaware of any breach of that agreement, were paid the correct amount under the contract, were unaware of any non-incurred costs being attributed to the CrossFit Kids seminars, and continued to operate the CrossFit Kids program as CrossFit employees. (Pl.'s MSJ at 23.) Defendants in turn point to evidence that Plaintiff breached the agreement by manipulating the seminar scheduling and profit calculations to reduce the amounts paid to Defendants. (Defs.' MSJ Resp. at 18.) These disputes persist, precluding summary judgment.

Finally, Plaintiff argues that Defendants produce insufficient admissible evidence of damages. (Pl.'s MSJ at 23.) Specifically, Plaintiff argues that the damages the Martins seek, from January 2011 to October 2014, should be limited to those occurring prior to May 2011, when the Martins allegedly agreed to a change in the financial terms of the Transition Agreement. (Pl.'s MSJ at 23.) Plaintiff also argues that the Martins waived or are estopped from asserting any damages after that date because they accepted payment of their employee salaries in lieu of seminar proceeds (Pl.'s MSJ at 23 n.11.) As noted above, factual questions remain as to what agreements controlled during which period, precluding summary judgment as to the Martins' Transition Agreement claims and the associated damages (Counterclaims 7 and 8).

### c. Tortious Interference Claims (Counterclaims 9 and 10)

At the outset of addressing Defendants' tortious interference claims, the Court notes that the parties make similar, if not identical, statute of limitations and equitable tolling arguments as those noted above. The Court again finds that Defendants have presented evidence that gives rise to a genuine dispute of material fact as to whether the statute of limitations period should be tolled, precluding summary judgment on those grounds.

Under Arizona law,

[t]he elements of a cause of action for intentional interference with contract are (1) a contract between the plaintiff and a third party; (2) knowledge of the defendant that the contract exists; (3) intentional interference by the defendant that caused the third party to breach the contract; (4) a showing

that the defendant acted improperly; and (5) a showing that damage resulted to the plaintiff.

*Pasco Indus., Inc. v. Talco Recycling, Inc.*, 985 P.2d 535, 547 (Ariz. Ct. App. 1998). Plaintiff moves for summary judgment on Defendants' tortious interference counterclaims by arguing that Defendants have provided no evidence of contractual or prospective economic relationships and no evidence that either CrossFit or Glassman disrupted the purported contracts, intended to interfere with those relationships, or otherwise acted with the requisite impropriety. (Pl.'s MSJ at 26-27.)[12]

Plaintiff argues that Defendants' counterclaim is based on alleged relationships with no contract or other indices of definiteness demonstrating an "actual and identifiable understanding or agreement." (Pl.'s MSJ at 25-26.) In response, Defendants point to evidence that they had annual contracts with their affiliates and short term contracts with their trainers, each of which carried an expectation of continued business. (Defs.' MSJ Resp. at 20.) Thus, at least a genuine issue of fact remains as to whether the requisite contracts existed.

But Defendants have not proffered evidence that Plaintiff's alleged interference caused third parties to breach their contracts. Defendants do provide evidence of growing revenues associated with their affiliate and trainer contracts that they argue demonstrate an expectation of a continued business relationship. However, it is undisputed that Defendants' contracts were not terminated as a result of Plaintiff's alleged conduct. (Pl.'s MSJ at 16 (citing Doc. 264-1, Defs.' Resp. to Pl.'s Separate Statement of Facts ¶¶ 52-53, 91-92).) If the contracts and relationships that Plaintiff allegedly interfered with continued beyond that interference, the most Defendants can contend is that Plaintiff

---

[12] Plaintiff also makes a footnote argument that Defendants' tortious interference claims are barred by the economic loss doctrine, (Pl.'s MSJ at 27 n.22), and, in its Reply, Plaintiff asserts that Defendants failed to respond to that argument, (Pl.'s MSJ Reply at 16). Because Plaintiff's argument is lodged only in a footnote (one of 35 in its Motion), cites only "instructive" California law, and is not fully developed, the Court declines to consider the argument.

*unsuccessfully* attempted to interfere with those relationships. Defendants' tortious interference claims thus fail as a matter of law.

The Court is also persuaded by Plaintiff's argument that the interference Defendants complain of is actually between Plaintiff and Defendants, not a third party affiliate or trainer, because Plaintiff revoked Defendants' rights to continue operating CrossFit Kids, not the affiliate's or trainer's rights. (Pl.'s MSJ at 26.) A party cannot be held liable for interference with its own contract. *Mintz v. Bell Atl. Sys. Leasing Int'l, Inc.*, 905 P.2d 559, 565 (Ariz. Ct. App. 1995). For these reasons, Plaintiff is entitled to summary judgment as to Defendants' tortious interference claims (Counterclaims 9 and 10).

### d. Defamation (Counterclaim 11)

Plaintiff lastly moves for summary judgment on Defendants' defamation counterclaim on the grounds that the alleged statements are non-actionable opinions or are conditionally privileged. (Pl.'s MSJ at 30, n.15.)

Under Arizona law, defamation in this instance requires: (1) the publication of an unprivileged defamatory statement of fact to a third party; (2) that the statement of fact be false; (3) knowledge of falsity and the defamatory nature of the statement, or reckless disregard to falsity and defamatory nature; and (4) harm. *Turner v. Devlin*, 848 P.2d 286, 288-89 (Ariz. 1993). Statements of opinion or similar rhetoric are not actionable unless they implicate a factual assertion. *Id.* "To be defamatory, a publication must be false and must bring the defamed person into disrepute, contempt, or ridicule, or must impeach plaintiff's honesty, integrity, virtue, or reputation." *Id.*

With regard to defamation of a public official, a defendant is subject to liability only if he, with actual malice, publishes to a third party a false and defamatory communication concerning the plaintiff. *Pinal Cty. v. Cooper ex rel. Maricopa Cty.*, 360 P.3d 142, 147 (Ariz. Ct. App. 2015). A defendant may assert the defense of privilege to a claim of defamation. Qualified privileges are limited to particular occasions requiring the exchange of information reasonably thought to be true. *Green Acres Trust v. London*, 688

P.2d 617, 620-21 (Ariz. 1984). Thus, to determine whether a qualified privilege exists, a court examines the circumstances to determine whether a privilege occasion arose. *Id.* If the privilege applies, a plaintiff must prove the privilege was abused by proving actual malice or by demonstrating excessive publication. *East v. Bullock's Inc.*, 34 F. Supp. 2d 1176, 1183 (D. Ariz. 1998) (citing *Green Acres Trust*, 688 P.2d at 624).

The parties dispute whether Defendants are public officials, but the Court need not resolve that question, because Defendants' evidence fails to show that Plaintiff's alleged statements were anything more than opinion, and Plaintiff's alleged statements are entitled to qualified privilege. The Court first notes that Defendants did not disclose two of the defamatory statements they raise in their Response to Plaintiff's Motion for Summary Judgment until after Plaintiff filed its Motion. (Pl.'s MSJ Reply at 18-19.) Because Defendants did not disclose them during discovery, the Court will not consider these statements in evaluating Defendants' claim. In any event, the Court notes that the two statements suffer from vagueness and a lack of foundation and would not have changed the Court's conclusions.

After disregarding the alleged statements that were not properly disclosed, what remains of Defendants' claim is that a CrossFit employee told another that Defendants' interest in CrossFit and CrossFit Kids had waned, that their professional performance was subpar, and that they had been distancing themselves from CrossFit. That Defendants' interest in CrossFit had waned or they had distanced themselves from Crossfit are generally statements of opinion, because they do not imply facts capable of being proved true or false. *See Pinal Cty.*, 360 P.3d at 147. A statement regarding whether Defendants' professional performance was subpar is a closer call. Defendants argue that this is a fact-based statement that implies that they are not good at their profession or diligent in their work, which could be construed as factual.

Defamation claims may be actionable against an employer for comments on employment performance. But the statement that Defendants' performance was subpar is not inherently factual, and the party hearing such a statement would reasonably assume

that it merely represented the employer's opinion. Indeed, in an employment relationship, the employer is regularly called on to give an opinion of the employee's dedication, diligence, and performance, and courts have generally found analogous statements to be less than what is necessary for a defamation claim. *See*, *e.g.*, *Conkle v. Jeong*, 853 F. Supp. 1160, 1166 (N.D. Cal. 1994), *aff'd*, 73 F.3d 909 (9th Cir. 1995) (finding that comments that employee acted like she was management and was too radical, difficult, and more trouble than she was worth were statements of opinion because they did not imply a provably false factual assertion); *Jaramillo v. Food 4 Less Madera*, No. CV F 10-1283 LJO GSA, 2010 WL 4746170, at *8 (E.D. Cal. Nov. 16, 2010) (noting that in most jurisdictions, a comment on an employee's job performance is not actionable unless it falsely accuses an employee of criminal conduct, lack of integrity, incompetence or reprehensible personal characteristics or behavior, even when employers' perceptions about an employee's effort, attitude, performance, potential or worth are objectively wrong). The Court finds that none of the statements alleged by Defendants are actionable for defamation, and Plaintiff is entitled to summary judgment as to Defendants' defamation counterclaim for this reason.

Moreover, as Plaintiff notes, the statements were made by one CrossFit employee to another and, under these circumstances, the Court finds that they were under a qualified privilege. (Pl.'s MSJ at 30 n.15; Pl.'s MSJ Reply at 19.) There is no dispute that the allegedly defamatory statements before the Court were made by one CrossFit employee to another, or others—a situation in which information was exchanged that the employees reasonably thought to be true. *See Green Acres Trust*, 688 P.2d at 620-21. The employees at most only conveyed the beliefs, opinions, or words of other CrossFit employees or owners. Plaintiff's alleged statements thus enjoyed a qualified privilege, and Defendants have not shown that Plaintiff exhibited actual malice or made excessive publication of the statements. *See id.* For this independent reason, summary judgment for Plaintiff is appropriate on Defendants' defamation claim (Counterclaim 11).

### C.    Rule 11 Sanctions

Federal Rule of Civil Procedure 11 allows a party to move for sanctions if an opposing party or counsel has brought an action before the Court with, among other things, an improper purpose, an intent to harass, or a lack of support in fact or law for the claims raised. Resolution of Defendants' Rule 11 Motion for Sanctions is straightforward. Defendants claim that Plaintiff's entire action was filed for an improper purpose and with the intent to harass and that Plaintiff was aware that it was frivolous from its inception. (Defs.' Mot. for Sanctions at 2-3.) However, it is difficult to imagine that a wholly frivolous case worthy of sanctions could progress this far, through this amount of motion practice, discovery, and judicial oversight by multiple judges, without abject fraud, blatant misrepresentation, or some other abuse of the judicial process—of which there is no evidence. Moreover, Defendants' Motion is based primarily, if not entirely, on affirmative defenses that have been stricken or yet to be proven, or defenses to claims for which the Court has now found genuine issues of material fact. The Court will not grant sanctions by finding the entirety of Plaintiffs' claims frivolous when it has found that its claims are viable and may well carry the day.

Therefore, the Court in its discretion declines to impose sanctions. It is evident that the parties have a long, contentious, and litigious history, both in the judicial system and in the court of public opinion. The parties' attacks, by way of briefing, often consist of accusations and insults, and Defendants' Motion is simply another vehicle to lodge those assaults. The disdain the parties feel towards each other is evident in both the content and sheer amount of filings. Indeed, despite the nature of their businesses, it is the Court that has been tasked with the heavy lifting, in having to resolve the parties' innumerable discovery disputes and filings. The Court refuses to serve as a referee to the parties' personal disputes or to grant sanctions requests that are not based in the law or rules of the Court.

### D. Motions to Seal

Plaintiff filed two Motions to Seal (Docs. 231, 233) in conjunction with its Motion for Summary Judgment. The Court has reviewed the Motions to Seal and finds that Plaintiff has satisfied the "compelling interest" test that operates when a party seeks to file documents under seal in conjunction with a motion that is more than tangentially related to the merits of the case. *See Ctr. for Auto Safety v. Chrysler Grp., LLC*, 809 F.3d 1092, 1101 (9th Cir. 2016). Specifically, Plaintiff has set forth a sufficient factual basis establishing that the designated confidential information could "become a vehicle for improper purposes such as the . . . release [of] trade secrets." *Kamakana v. City & Cty. of Honolulu*, 447 F.3d 1172, 1179 (9th Cir. 2006). The Court will thus grant Plaintiff's Motions to Seal.

## IV. CONCLUSIONS

The Court finds that Defendants have presented no evidence of diligence in seeking amendment to their Counterclaims, as required by Rule 16, and provided no justification for the over two-year delay from when they obtained knowledge upon which to base amendment to when they moved the Court to do so. Likewise, to the extent Plaintiff has moved the Court for leave to amend the Complaint to add new claims, Plaintiff has similarly failed to show diligence under Rule 16. The parties' requests to amend the pleadings are thus denied.

With regard to Plaintiff's Count 1, no genuine dispute of material fact exists as to the existence of the 2012 Affiliate Agreement or the restrictions applied to Mikki Martin and CrossFit therein, but Defendants Jeff Martin, BXMA, and CFBX are entitled to summary judgment because they were not parties to the agreement. The parties concede that multiple outside agreements, oral and written, also existed, and genuine issues of fact remain as to their terms and applicable periods. If Plaintiff rescinded any right to use its marks, the exclusive terms of the 2012 Affiliate Agreement may have controlled, and Mikki Martin's continued use of the CrossFit mark may have violated that contract. However, what damages, if any, Plaintiff suffered from any such breach must be

determined at trial. As for Plaintiff's Count 2, genuine issues of material fact remain as to Plaintiff's ACPA claim, and it shall also proceed to trial.

Regarding Defendants' Counterclaims 5 and 6, Defendants were not a party to the 2009 License Agreement and thus cannot bring claims to enforce that agreement. For Counterclaims 7 and 8, questions of material fact remain regarding Plaintiff's breach of the Transition Agreement as to the Martins only, and those claims shall proceed to trial. As for Counterclaims 9, 10 and 11, Defendants have failed to produce sufficient evidence to prove essential elements of their tortious interference and defamation claims, and Plaintiff is thus entitled to summary judgment on those claims.

Finding no evidence of harassment, frivolity, or improper purpose on Plaintiff's part, the Court denies Defendants' Rule 11 Motions for Sanctions. The matter has been heavily litigated and Defendants have not presented evidence that would warrant the sanctions they seek.

In short, the following claims shall now proceed to trial: Plaintiff's Count 1, breach of the 2012 Affiliate Agreement as applied to Defendant Mikki Martin only; Plaintiff's Count 2, violation of the ACPA; Defendants' Counterclaim 7, breach of the Transition Agreement as brought by the Martins only; and Defendants' Counterclaim 8, breach of the covenant of good faith and fair dealing with respect to the Transition Agreement as brought by the Martins only. The Court will set a hearing to discuss a trial date with the parties by separate Order.

**IT IS THEREFORE ORDERED** denying Defendants and Counterclaimants Jeff Martin, Mikki Lee Martin, Brand X Martial Arts, and CrossFit Brand X, Inc.'s Motion to Amend Answer and Counterclaim (Doc. 214).

**IT IS FURTHER ORDERED** granting in part and denying in part Defendants and Counterclaimants' Motion for Summary Judgment (Doc. 216). Defendants Jeff Martin, Brand X Martial Arts, and CrossFit Brand X are entitled to summary judgment as to Plaintiff's breach of contract claim (Count 1). The balance of Defendants' Motion is denied, and Plaintiff's remaining claims will proceed to trial.

**IT IS FURTHER ORDERED** granting in part and denying in part Plaintiff's Motion for Summary Judgment (Doc. 222). Plaintiff CrossFit is not entitled to summary judgment on its claims, and they will proceed to trial as limited above. Counterdefendants CrossFit and Greg Glassman are entitled to summary judgment on Defendants' Counterclaims for breach of the 2009 License Agreement and the associated covenant of good faith and fair dealing (Counterclaims 5 and 6), for breach of the Transition Agreement and the associated covenant of good faith and fair dealing only to the extent these counterclaims are brought by Brand X Martial Arts and CrossFit Brand X (Counterclaims 7 and 8), tortious interference (Counterclaims 9 and 10), and defamation (Counterclaim 11). The balance of Counterdefendants' Motion is denied, and Defendants' remaining claims (Counterclaims 7 and 8 as brought by the Martins) will proceed to trial.

**IT IS FURTHER ORDERED** denying Defendants and Counterclaimants' Renewed Motion for Sanctions (Doc. 235).

**IT IS FURTHER ORDERED** granting Plaintiff's Motions to Seal (Docs. 231, 233). The Clerk shall accept for filing under seal the documents currently lodged at Docs. 232 and 234.

Dated this 22nd day of September, 2017.

Honorable John J. Tuchi
United States District Judge